## UNITED STATES v. CONTINENTAL NAT. BANK & TRUST CO. et al.
### No. 6332.

Circuit Court of Appeals, Seventh Circuit.
Jan. 5, 1938.

James W. Morris, Asst. Atty. Gen., Sewall Key and Fred E. Youngman, Sp. Assts. to Atty. Gen., and Michael L. Igoe, U. S. Atty., of Chicago, Ill., for the United States.

Herbert Pope and Benjamin M. Price, both of Chicago, Ill., for appellees.

Before EVANS, SPARKS and MAJOR, Circuit Judges.

SPARKS, Circuit Judge.

This appeal presents the question of the liability of the distributees under the will of James Duggan, deceased, for a tax liability alleged to have been due from him as transferee of the assets of a dissolved corporation. The Government filed suit in equity against the testamentary trustee and beneficiaries under the will of Duggan, deceased. Its bill of complaint was dismissed, and it is from the order of dismissal that this appeal is prosecuted.

The facts relied upon to sustain the prayer for relief against the distributees were substantially as follows: James Duggan died testate in March, 1929, naming the Biscayne Trust Company, of Florida, the executor of his will. Shortly after its appointment it was placed in the hands of a receiver and dismissed as executor, and on September 15, 1930, Lee C. Robinson was appointed and qualified as administrator de bonis non. During the years 1919 and 1920, Duggan had been the principal owner and stockholder of the Johnson City and Big Muddy Coal and Mining Company, an Illinois corporation which with a subsidiary filed a consolidated income and profits tax return for the year 1920 on May 16, 1921, and paid the tax due thereon. An additional return was filed in February, 1922, showing additional taxes due for the year 1920. Upon investigation by the Commissioner, a deficiency was determined in the amount of $316,620, and a sixty-day letter to that effect was sent to the taxpayer on December 24, 1924. No appeal being taken from this determination, assessment was made on the January 1925 list.

During the years 1920 and 1921, the main corporation was in process of dissolu-

tion, and during the course of it, there were transferred to Duggan as president and principal stockholder, assets belonging to it in the amount of $295,331 for which he paid no consideration. The bill alleges that these assets, in the form of funds and negotiable securities, were received by Duggan impressed with a trust in favor of the United States for the payment of the tax account due from the corporation. On April 15, 1926, the Commissioner notified Duggan of a proposed assessment against him in the amount of the funds received by him from the corporation, constituting his liability as transferee of its assets. On June 11, 1926, Duggan filed a petition before the Board of Tax Appeals protesting the assessment. After hearing, and subsequent to Duggan's death, the Board filed its order of redetermination on January 27, 1931, fixing decedent's liability as transferee at $295,331, with interest from December 6, 1924. The bill further alleged that six months thereafter, no petition for review having been filed, and no appeal having been taken, this order became final, and a copy of it was attached to the bill of complaint. The bill further stated that Robinson, decedent's administrator, had actual notice and knowledge of the tax account owing by Duggan "according to the order of redetermination * * * and, in addition thereto * * * through proof of claim filed with him on April 24, 1931, by the plaintiff * * * prior to the final settlement of the estate * * *"

Relief was prayed in equity against the testamentary trustee and beneficiaries for the reason that there was no adequate remedy at law against the dissolved corporation or against the estate of the decedent, the assets of which had been distributed to appellees. The court was therefore asked to decree that there was due from Duggan or his estate the sum of $295,331 by reason of the fact that Duggan was transferee of the assets of the dissolved corporation in that amount, and that appellees, and each of them, be held accountable for the amount distributed to and received by them from the estate of Duggan.

The bill of complaint was filed against appellees on May 6, 1932. On January 16, 1933, they filed a motion to dismiss it on the grounds that it did not state facts sufficient to constitute a cause of action; that if appellant had ever had a cause of action against them by reason of the allegations of the bill it could not be maintained because

of the bar of the statute of limitations contained in sections 277 and 280 of the Revenue Act of 1926, 44 Stat. 58, 61, and section 311 (b) of the Revenue Act of 1928, 26 U.S.C.A. § 311(b) and note. On January 11, 1937, appellant confessed appellees' motion to dismiss the complaint, and by leave of court filed an amended bill of complaint instanter. The amended bill added only the fact that on February 14, 1931, the Commissioner made a jeopardy assessment against Duggan, deceased, in the sum of $295,331, together with interest thereon in the sum of $109,661, representing the amount redetermined by the Board of Tax Appeals as the liability of Duggan as transferee, said assessment appearing on the Commissioner's February 14, 1931 list.

It will be noted that nothing is said in the bill of complaint as to substitution in the proceedings before the Board of the decedent's representatives. For facts as to this we refer to a memorandum of the Board entered December 16, 1930, prior to its order of redetermination, Duggan v. Commissioner of Internal Revenue, 21 B.T.A. 740. From this we learn that on April 29, 1929, after submission of the case for decision, counsel for decedent filed with the Board his suggestion of the death of his client. On January 6, 1930, the Board promulgated its report. On January 16, 1930, the Commissioner moved the substitution of the Biscayne Trust Company, executor under the will of decedent, as petitioner in the proceeding, submitting a certified copy of letters testamentary issued to it on April 15, 1929. Substitution was ordered by the Board on January 21, 1930. Notice was thereafter sent to the Biscayne Company on February 7, 1930, of a hearing on recomputation to be held March 5, 1930. On March 1, counsel for the substituted petitioner appeared specially to move that the order of substitution be vacated. On March 5, there was further argument by both parties on the motion to vacate, and counsel for the Commissioner also argued as to the recomputation. On April 14, the order of substitution was vacated, and on April 28, on application of the Commissioner, a rule to show cause why it should not be substituted was issued against the Biscayne Company, a copy being delivered to Lee C. Robinson, its vice-president. On September 20, counsel for the Biscayne Company filed suggestion that it was no longer executor of the estate of decedent, having suspended operations June 30, and that it was under-

stood that Lee C. Robinson was acting as administrator de bonis non. A copy of this paper was served upon the Commissioner but he took no further action with regard to the matter. Prior to the order of redetermination, notices were sent by the Board to decedent at his last known address, to Robinson, and to the Biscayne Company. Under these circumstances the Board held that it had jurisdiction to enter a valid final order in the proceeding, and thereupon, on January 27, 1931, entered its decision. The Government argues that this order of redetermination was valid and binding, and together with the jeopardy assessment made the following month, operated to fix the liability of Duggan as transferee of the dissolved corporation so that it could proceed at any time within a six-year period following the assessment to collect from anyone into whose hands the assets of the transferee had passed.

Section 277(a)(3) of the Revenue Act of 1926, 44 Stat. 58, provides a five-year period of limitation for assessment of taxes imposed by certain earlier Acts.[1] Section 278(d) as amended by section 506 of the Act of 1928, 45 Stat. 870, provides for a six-year period of limitation for the collection of such taxes.[2]

Section 280 of the 1926 Act, 44 Stat. 61, provides a method for the assessment and collection of claims against transferred assets.[3] It will be noted that this section provides for the fixing of the liability of trans-

---

[1] Sec. 277(a) (3). "The amount of income, excess-profits, and war-profits taxes imposed by * * * Act of 1918 * * * shall be assessed within five years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period."

[2] Sec. 278(d). "Where the assessment of any income, excess-profits, or war-profits taxes imposed by this title or by prior Act of Congress has been made (whether before or after the enactment of this Act) within the period of limitation properly applicable thereto, such tax may be collected by distraint or by a proceeding in court (begun before or after the enactment of this Act), but only if begun (1) within six years after the assessment of the tax, or (2) prior to the expiration of any period for collection agreed upon in writing by the Commissioner and the taxpayer before the expiration of such six-year period. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon."

[3] Sec. 280. (a) "The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this title (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds):

"(1) The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including inter-

est, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this title or by any prior income, excess-profits, or war-profits tax Act.

"(2) The liability of a fiduciary under section 3467 of the Revised Statutes in respect of the payment of any such tax from the estate of the taxpayer. Any such liability may be either as to the amount of tax shown on the return or as to any deficiency in tax.

"(b) The period of limitation for assessment of any such liability of a transferee or fiduciary shall be as follows:

"(1) Within one year after the expiration of the period of limitation for assessment against the taxpayer; or

"(2) If the period of limitation for assessment against the taxpayer expired before the enactment of this Act but assessment against the taxpayer was made within such period,—then within six years after the making of such assessment against the taxpayer, but in no case later than one year after the enactment of this Act.

"(3) If a court proceeding against the taxpayer for the collection of the tax has been begun within either of the above periods,—then within one year after return of execution in such proceeding.

"(c) For the purposes of this section, if the taxpayer is deceased, or in the case of a corporation, has terminated its existence, the period of limitation for assessment against the taxpayer shall be the period that would be in effect had the death or termination of existence not occurred.

"(d) [As amended by section 505 of the Act of 1928] The running of the statute of limitations under the assessment of the liability of a transferee or fiduciary shall, after the mailing of the

ferees of taxpayers, and limitations on the assessment of such liability. The parties were proceeding under this section when the transferee died. Thereafter a final order of redetermination was entered by the Board in his name, and a jeopardy assessment levied. Appellants contend that the entry of this jeopardy assessment operated to start the running of the period of limitations provided in section 278(d) against collection, hence gave them until February, 1937, to collect the liability of Duggan by suit or otherwise. We cannot agree with this contention in view of section 311(b) of the Act of 1928, 26 U.S.C.A., § 311(b) and note, which provides as follows:

"(2) In the case of the liability of a transferee of a transferee of the property of the taxpayer,—within one year after the expiration of the period of limitation for assessment against the preceding transferee, but only if within three years after the expiration of the period of limitation for assessment against the taxpayer;—except that if before the expiration of the period of limitation for the assessment of the liability of the transferee, a court proceeding for the collection of the tax or liability in respect thereof has been begun against the taxpayer or last preceding transferee, respectively,—then the period of limitation for assessment of the liability of the transferee shall expire one year after the return of execution in the court proceeding."

We think it is clear from this that Congress did not intend to allow a six-year period of limitation for the collection of each successive transfer of the liability of the original tax. It must be noted that section 278 provides for collection by distraint or court proceeding but only if begun within six years after the assessment of the tax, while section 280 provides for the assessment of the *liability* of a transferee of property of a taxpayer in respect of the tax. The limitations of the latter section have to do only with assessment, not with collection. We think it was not intended that

the six-year provision of section 278 should be read into it. No provision is made in section 280 with respect to the liability of transferees of transferees. Such provision appears for the first time in the 1928 Act, as above, and we consider that it is entirely applicable here. The question then is whether or not the proceeding against these transferees was brought within the limited period there provided.

The return of the corporate taxpayer which gave rise to the liability here sought to be collected was filed May 16, 1921. The period for assessment, therefore, ran until May, 1926. Hence, unless the limitation period was suspended by the starting of a court proceeding against the taxpayer or last transferee, the assessment of the liability of the transferee of the transferee was barred after May, 1929, in spite of the fact that the period of limitation for assessment against the preceding transferee did not expire until July 27, 1931, when the decision of the Board became final.[4] While we have grave doubts as to the validity of the order of redetermination entered ex parte by the Board, January 27, 1931, almost two years after the Government had knowledge of Duggan's death, we do consider that under the provision of amended section 280(d) the period of limitation against the assessment of the liability of Duggan did not expire until that order became final. See American Equitable Assur. Co. v. Helvering, 2 Cir., 68 F. 2d 46. However, we construe section 311 (b) to mean that the liability of the transferee of a transferee may be assessed within one year after the expiration of the period of limitation for assessment against the preceding transferee only if within three years after the expiration of the period for assessment of the taxpayer, and that only a court proceeding against the taxpayer or preceding transferee brought before the period expires as to them can keep alive rights against a subsequent transferee, and then only for a limited time. It is unnecessary for us to determine

---

notice under subdivision (a) of section 274 to the transferee or [of] fiduciary, be suspended for the period during which the Commissioner is prohibited from making the assessment in respect of the liability of the transferee or fiduciary [and in any event, if a proceeding in respect of the liability is placed on the docket of the Board, until the decision of the Board becomes final], and for 60 days thereafter. * * *

"(f) As used in this section, the term 'transferee' includes heir, legatee, devisee, and distributee."

[4] Section 1005(a) of the 1926 Act, 26 U.S.C.A. § 640(a) provides that the decision of the Board shall become final upon the expiration of the time allowed for filing a petition for review, which under section 1001(a) of that Act, 44 Stat. 109, is fixed at six months.

here whether, upon a showing that the estate had been closed prior to the expiration of the period for assessment, so that suit against the estate would be futile, a suit against distributees brought within that period would be effective to keep alive the liability as against those distributees. Here the suit was started almost ten months after the expiration of the period for assessment of Duggan, and the fact that a jeopardy assessment was made within the period does not render these transferees liable for its payment in the absence of a court proceeding started before the expiration of the period of limitation for assessment of the preceding transferee. It follows that the bill of complaint did not set up a good cause of action, hence, was properly dismissed.

Decree affirmed.