**UNITED STATES of America, Plaintiff,**

v.

**Koy E. DAWKINS, C. Frank Griffin, John R. Nichols and Hazel Nichols, Defendants.**

**No. C–C–77–370.**

United States District Court, W. D. North Carolina, Charlotte Division.

Feb. 1, 1979.

Harold M. Edwards, U. S. Atty., Asheville, N. C., Harold J. Bender, Asst. U. S. Atty., Charlotte, N. C., James J. Brown, U. S. Dept. of Justice, Washington, D. C., for plaintiff.

B. Irvin Boyle and Norman A. Smith, Boyle, Alexander & Hord, Charlotte, N. C., C. Ralph Kinsey, Caudle, Underwood & Kinsey, Charlotte, N. C., and Whiteford S. Blakeney and William L. Auten, Blakeney, Alexander & Machen, Charlotte, N. C., for defendants.

## MEMORANDUM OF DECISION

McMILLAN, District Judge.

The United States of America, plaintiff, obtained a judgment in the Court of Claims for $151,252.08 against Monroe Garment Company, now dissolved. It brought this suit on November 19, 1977, against Koy Dawkins and Frank Griffin, attorneys who in 1971 handled the dissolution and payment of the debts of Monroe Garment Company. The government alleges that Dawkins and Griffin, as escrow agents, paid Monroe's debts at a time when Monroe was insolvent and indebted to the United States. The plaintiff also seeks recovery against the defendants Nichols, officers and directors of Monroe, alleging that they were unjustly enriched by the allegedly illegal payment of the debts of Monroe Garment Company. The United States contends that those payments were in violation of the government's priority under 31 U.S.C. § 191, and that the defendants Dawkins and Griffin are personally liable for the government's claims under 31 U.S.C. § 192, which provides:

"Every executor, administrator, or assignee, or other person, who pays, in whole or in part, any debt due by the person or estate for whom or for which

he acts before he satisfies and pays the debts due to the United States from such person or estate, shall become answerable in his own person and estate to the extent of such payments for the debts so due to the United States, or for so much thereof as may remain due and unpaid."

All defendants have moved that the case be dismissed as barred by the statute of limitations. Affidavits have been filed and interrogatories have been answered. There is no genuine controversy as to any material fact. The case will be considered under Rule 56 as a motion for summary judgment based on the bar of the statute of limitations. For reasons set out below, the defendants' motions will be allowed and the case will be dismissed.

The pertinent statute is 28 U.S.C. § 2415(a), which reads:

"(a) Subject to the provisions of section 2416 of this title, and except as otherwise provided by Congress, every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed *within six years after the right of action accrues* or *within one year after final decisions have been rendered in applicable administrative proceedings required by contract* or by law, whichever is later:" (Emphasis added).

In any issue involving the statute of limitations, the chronology of events is important.

Monroe Garment Company, a small, closely held clothing manufacturer, made a contract in 1968 with the United States to manufacture shirts for the Department of Defense. Some shirts were manufactured and delivered. In 1969, the United States asserted that some of the shirts did not meet the contract specifications, and pursuant to the contract it started administrative proceedings before the Armed Services Board of Contract Appeals (ASBCA) to obtain an equitable price reduction because of the alleged defects. On May 14, 1970, Monroe sued the government contracting officer in the Middle District of North Carolina to compel the United States to accept delivery of some 73,316 unclaimed shirts. On October 28, 1971, the ASBCA rendered a decision that the government was entitled to an equitable price reduction to be negotiated by the parties.

While the case was pending before the ASBCA, Monroe Garment Company, on or about April 1, 1971, sold substantially all of its assets to a company named Comar Industries. A notice of the sale was placed in the newspapers, and defendants Dawkins and Griffin, by correspondence quoted below, fully advised the cognizant government officials about Monroe's dissolution. The proceeds of the sale were deposited in a bank in the names of Dawkins and Griffin as escrow agents, and Dawkins and Griffin disbursed the money to Monroe Garment Company's creditors.

November 4, 1971, was the date of the final such disbursement.

On December 8, 1971, Monroe brought suit against the United States in the Court of Claims for damages allegedly sustained by the government's breach of contract. The United States moved for summary judgment based on its claim for an equitable price reduction.

On December 19, 1973, the Court of Claims decided that case in favor of the defendant, the United States, and remanded it to the ASBCA to determine the amount of the equitable price reduction claimed by the government. *Monroe Garment Company v. United States,* 488 F.2d 989, 203 Ct.Cl. 324 (1973).

On November 7, 1975, the ASBCA issued a decision that the United States was entitled to recover from Monroe Garment Company the sum of $151,252.08.

On January 27, 1977, fourteen months later, the Court of Claims entered summary judgment in favor of the government against Monroe for $151,252.08.

On November 19, 1977, more than six years after the payments in question, the United States started this suit.

The United States opposes the motion to dismiss upon three grounds:

1. That there is no statute of limitations applicable to suits for violation of the federal priorities statute, 31 U.S.C. §§ 191 and 192. This contention was firmly rejected in *United States v. Motsinger,* 123 F.2d 585, 587 (4th Cir. 1941). In that case a fiduciary received some assets of a taxpayer in trust and distributed the assets without paying some United States taxes which had been assessed against the taxpayer. The court said:

> "There can be no question, we think, but that a suit under 3467 [31 U.S.C. § 192] to hold a fiduciary liable in his own person and estate for a tax due the United States is a 'proceeding in court' to collect the tax and that it may be maintained only if commenced 'within six years after the assessment of the tax', as provided in the section just quoted, IRC § 276(c)."

2. That the "applicable administrative proceedings" did not end until January 27, 1977, when the Court of Claims entered summary judgment against Monroe Garment Company. Therefore, says the United States, this action, filed on December 19, 1977, was brought within a year of that final decision. This contention is also without merit. The "applicable administrative proceedings" contemplated in 28 U.S.C. § 2415(a) is the proceedings before the ASBCA. *Crown Coat Front Co. v. United States,* 386 U.S. 503, 511, 87 S.Ct. 1177, 18 L.Ed.2d 256 (1967). That proceeding was completed November 7, 1975, when the ASBCA filed its decision establishing the precise amount of Monroe's liability. This suit was not filed within a year after that ruling.

3. That even if the cause of action accrued as early as November 4, 1971, when the distribution of assets was completed, the suit was nevertheless brought in time, because it was not until well within six years before the suit was filed that facts material to the right of action became known, or reasonably should have become known, to the responsible United States officials. The United States relies on 28 U.S.C. § 2416(c) which reads:

> "For the purpose of computing the limitations periods established in section 2415, there shall be excluded all periods during which—
>
> *    *    *    *    *    *
>
> "(c) facts material to the right of action are not known and *reasonably* could not be known by an official of the United States charged with the responsibility to act in the circumstances; . . ." (Emphasis added.)

This contention is also without merit. The government contracting officer in charge of the case, James O. Ambler, was informed during the summer of 1971 of the sale of assets and dissolution of the Monroe Garment Company. On July 26, 1971, Mr. Ambler wrote to the defendant Dawkins a demand letter reading in part as follows:

> "In connection with the proposed dissolution of Monroe Garment Co., please take notice that as a result of its performance under Contract DSA100–68–C–1387 the Government has a contingent claim in the sum of $170,795.02 computed as follows:
>
> *    *    *    *    *    *
>
> "While it does not appear from your published notice that the Monroe Garment Co. is insolvent, I deem it appropriate to alert you to the provisions of 31 USC 191 which affords the U.S. Government priority in the event of insolvency."

A week later, on August 3, 1971, Mr. H. C. McDaniel, Chief of the Field Services Office, United States Army Finance and Accounting Center, wrote the defendant Dawkins as follows:

> "A component of the Department of Defense has informed this command in the matter of Monroe Garment Company, 408 Sutherland Avenue, Monroe, NC. We are informed that an act of insolvency was made on 24 June 1971 and claims are to be filed with you.
>
> "As spokesman for the Department of the Army in insolvency matters and as a party in interest in this matter, please assist us by verifying the above information, to include the date within which you choose to have claims filed."

On August 11, 1971, Dawkins wrote the Commanding General, Finance Center, In-

dianapolis, Indiana, correcting the government's assertion that the liquidation of Monroe Garment Company was the equivalent of insolvency. That letter reads in part as follows:

> "This is in reply to Mr. H. C. McDaniel's letter to me of August 3, 1971. I have no idea where Mr. McDaniel has received information that there has been some act of insolvency on the part of Monroe Garment Company, our client. *Monroe Garment Company recently undertook a sale of its assets to another corporation which corporation is still actively in business here in Monroe, North Carolina.* An adequate consideration was received for the sale of its assets and all requirements of the bulk sales act under the Uniform Commercial Code as enacted in the State of North Carolina have been or are now being complied with. *Since there is no reason for the corporation to continue to exist, then pursuant to the business corporation act of North Carolina, the Monroe Garment Company proceeded with a voluntary liquidation by which the corporation will be dissolved and its assets remaining after payment of creditors are to devolve to its sole stockholder.* It appears that somewhere along the line the word 'liquidation' has been determined to mean 'insolvency' which is obviously not the case.

> \* \* \* \* \* \*

> "Since Mr. McDaniel's letter indicates an interest in matters of insolvency, I presume that you would have no further interest in the orderly and voluntary liquidation of Monroe Garment Company. If you have, then I'd be pleased to answer any particular questions which you might have. If your letter is in respect to any alleged claims by the Department of Defense or its sub-departments against Monroe Garment Company, then I most respectfully refer you to Mr. Edwin J. McDermott, Attorney, who represents Monroe Garment Company in those matters whose address appears below." (Emphasis added.)

On August 20, 1971, Mr. McDaniel, already aware of the previous sale of Monroe's assets, sent a memorandum to "HEADS OF DA SPECIAL STAFF AGENCIES" and "COMMANDERS OF MAJOR ARMY FIELD COMMANDS," as follows:

> "1. Information has been received by this command that captioned Contractor recently undertook a sale of its assets, and all requirements of the bulk sales act under the Uniform Commercial Code as enacted in the State of North Carolina, have been or are now being complied with. The Contractor proceeded with a voluntary liquidation by which the corporation will be dissolved and its assets remaining after payment of creditors are to devolve to its sole stockholder.

> "2. Any known or potential claims by and against the United States will be reported to this command, ATTN: FINCY, in accordance with Chapter 16, AR 37–103."

In answer to interrogatories the government has admitted that Ambler's knowledge of the proposed dissolution of Monroe Garment Company was supplied to him by "Harry Shargel, who as Chief of the Claims Division of the Legal Office of DPSC was investigating and processing the claim against Monroe Garment Co." Shargel, in answer to an interrogatory, stated that the dissolution of Monroe came to the attention of Ambler and Shargel "sometime between 28 June 1971 and 26 July 1971."

The responsible government officials were on clear and unequivocal notice that the sale of Monroe's assets had taken place in the spring of 1971 and that its "assets remaining after payment of creditors are to devolve to its sole stockholder."

Dissolution of a corporation certainly implies that the proceeds from the sale of assets will be used to pay creditors, if any, within a reasonable period of time.

I find no merit whatsoever in the contentions of the United States. The prosecution of this suit is unconscionable. It is obvious that the responsible people in the government knew at all times what was going on and that the proposed dissolution would be completed, but sat by for six and a half

years before lifting a hand to file this suit. In view of the contested nature of the underlying claims and the unconscionable way in which the government asserts its ignorance of its cause of action, I find this to be a special case in which the statute of limitations is not merely a technical defense but a necessary shield to prevent the infliction of a gross injustice upon the defendants.

The government has acted in bad faith by vexatiously pursuing a meritless case. The defendants should be awarded attorneys' fees under these circumstances. *See Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 258–59, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978).

Counsel for defendants are requested to submit affidavits on the question of attorneys' fees, and a proposed judgment consistent with this memorandum of decision.

SO ORDERED, this 31 day of January, 1979.